### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| ROBERT PEACHER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:04-CV-523 PS |
| | ) | |
| DAN MCBRIDE, | ) | |
| | ) | |
| Respondent. | ) | |

### OPINION AND ORDER

*Pro se* petitioner, Robert Peacher, an inmate at the Maximum Control Complex in Westville, Indiana, was found guilty of illegally possessing a cellular telephone and was docked 180 days good time credit as a result. After exhausting his administrative remedies, Peacher petitioned for relief under 28 U.S.C. § 2254. The Response filed on behalf of the respondent by the Attorney General of Indiana demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982). In its response, the Attorney General of Indiana has submitted the administrative record including documents designated Exhibits A through G, which set out the procedures before the prison's conduct adjustment board ("CAB"). The petitioner filed a traverse.

**A.    Relevant Facts**

On June 29, 2004, Officer Whelan received a tip that Peacher had a cellular phone in his cell. (*See* Response at Ex. B.) That same day, staff went to Peacher's cell to look into the matter. Peacher was ordered to cuff up, but before he did, correctional staff observed him holding something to his ear and then observed him flush something down the toilet. (*Id*.) A cellular phone charger was found plugged into the outlet in his cell. At the time, Peacher claimed that the charger was for a light that he had in his cell, but the charger did not fit the light fixture when the correctional staff

attempted to plug it in.  The next day Peacher was interviewed and admitted that in fact he bought the cell phone for $400.00 from a former correctional officer.  He also admitted that the charger was for the cellular phone and that he flushed the phone down the toilet.  (*Id.*)  An outside law enforcement agency also relayed the information that Peacher had a cellular phone account and that Elizabeth Cooper also had a phone on the same plan.  Based on this information, Peacher was charged with the administrative offense of "trafficking." (Response at Ex. A.)

Peacher was given notice of the charges on July 15, 2004. (Response at Ex. C.)  At the screening, Peacher did not request a lay advocate or witness statements.  He also indicated that he did not wish to call any witnesses.  (*Id.*)  He did request the phone, charger and a copy of report from the outside agency as physical evidence.  (*Id.*)  The CAB hearing was held on July 20, 2004. (Response at Ex. E.)  The CAB found Peacher guilty of the charge.  (*Id.*)  Peacher's finding of guilt was based on the staff reports, Peacher's admission, a photograph of the charger, and the investigation case file.  The sanction imposed was a 180 day earned credit time loss and a demotion in credit class.  The finding of guilt and the sanctions were upheld by the facility head and the final reviewing authority.  (*See* Response at Ex. F2 & G.)

**B.     Standard of Review**

As the loss of good time credit is a "liberty" interest protected by the Fourteenth Amendment to the Constitution, it triggers the applicability of *Wolff v. McDonnell*, 418 U.S. 539 (1974), and requires certain procedural steps as stated in that Supreme Court decision.  Due process requires that Peacher be given: (1) advance written notice of the charges against him at least twenty-four hours before the hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement

2

by the fact finder of the evidence relied on and the reasons for the disciplinary action. *Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073 (7th Cir. 1994) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-567 (1974)).

For the hearing to be meaningful, the prisoner should be afforded an opportunity to be heard before an impartial decision maker, *id.*, and the decision must be supported by "some evidence" in the record. *Superintendent, Mass. Corr. Inst. at Walpole v. Hill*, 472 U.S. 445 (1985). The so-called "some evidence" standard has been applied in this circuit, as reflected in *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000), *McPherson v. McBride*, 188 F.3d 784 (7th Cir. 1999), and *Meeks v. McBride,* 81 F.3d 717 (7th Cir. 1996). This is a lenient standard, requiring no more than "a modicum of evidence." *Webb*, 224 F.3d at 652. Even evidence that can be characterized as meager is sufficient to support the revocation of good-time credits so long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Id.* (citing *Hill*, 472 U.S. at 457). "The relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* (citing *Hill*, 472 U.S. at 455–56).

**C.**  **Discussion**

Peacher claims that the State violated his constitutional rights in five ways: (1) his due process rights were violated when the facility deprived him of his personal property, including but not limited to, a t.v. purchased from the commissary, photos of family and friends and legal documents; (2) there was insufficient evidence to find him guilty because the CAB did not have the item that was alleged to have been trafficked in; (3) there was insufficient evidence because the

3

CAB relied on his confession that he says he never made;  (4) he was denied the right to produce evidence; and (5) he was denied the right to a continuance.

## 1.        Sufficiency of the Evidence

Peacher argues in his first three claims that the CAB did not have sufficient evidence to find him guilty.  As noted above, the amount of evidence needed in these types of cases is very modest.  In this case, the evidence presented to the CAB easily meets the "some evidence" standard.  In finding Peacher guilty, the CAB clearly indicates that it relied upon the staff reports, Peacher's own admission, physical evidence, and the investigation case file.  (*See* Ex. E.)

First, when staff approached Peacher's cell to confront him regarding their suspicions concerning his possession of a cell phone, they saw him with something up to his ear, which he promptly flushed down the toilet.  (*See* Response at F2.)  Second, staff recovered a cell phone charger from Peacher's cell.  Peacher told the correctional officers that he used the charger to plug his light into, but when they attempted to use the plug for the light, it did not fit. (Ex. B.)  Third, and "most damning" is the fact that Peacher admitted to investigators that he bought the cell phone from a former correctional officer for $400 and that he flushed it down the toilet. (*See id.*; Ex. F2.) Finally, there was also evidence that Peacher was on a cellular phone account with Elizabeth Cooper.  All of this information was in the investigator's file.  Thus, when the Report of Disciplinary hearing states that Peacher was found guilty because of "the information contained in the investigators case file," *see* Exhibit E, that was all that was needed to be said.

Peacher argues his due process rights were violated because the phone was not produced during the hearing.  This argument has no merit.  It is not surprising that the cell phone was not produced.  After all, Peacher himself admitted that he flushed the phone down the toilet.  Retrieving

the phone was likely not feasible.  Regardless, even without the cell phone, there was more than enough evidence for the CAB to make a finding of guilt.

In sum, when the standard of proof is so low – some evidence – an admission, for example, by the offender that he did the things that he is charged with or the fact that a cell phone charger was found in his cell, clearly meets that modest threshold.  Peacher's claim that his finding of guilt was based on insufficient evidence is denied.

**2.        Due Process Violation**

Peacher says his rights were violated because he was denied the right to admit proof of a power of attorney as evidence, and denied the right to a continuance in order to obtain a copy of the power of attorney.  According to Peacher, this documentation would have established that his family had the right to obtain things in his own name, like a cell phone, and that this would have blunted the evidence produced by the state that Peacher and Elizabeth Cooper were both on the cellular phone account.  Thus, Peacher claims that the  power of attorney would prove that no trafficking took place.

The respondent argues that these claims are barred because Peacher failed to raise them in his appeal to the facility head.  It is clear under *Markham v. Clark*, 978 F.2d 993 (7th Cir. 1992) and *Ping v. McBride*, 888 F. Supp. 917 (N.D. Ind. 1993), that as a prerequisite to seeking relief under § 2254, available state remedies must be exhausted.  In *Markham*, the Seventh Circuit held that an Indiana state prisoner who fails to pursue an administrative appeal of his denial of parole "forfeit[s] his state remedies" and is thus also "barred from obtaining relief from the federal court."  *Markham,* 978 F.2d at 995.  Peacher argues that he did mention the existence of a power of attorney in his

appeal to the final reviewing authority.  However, because he did not raise the issue to the facility head, these claims are barred from federal review.

## CONCLUSION

For these reasons Peacher's petition for relief under 28 U.S.C. § 2254 is **DENIED.**  The clerk shall treat this civil action as **TERMINATED**.

**SO ORDERED.**

ENTERED: August 17, 2005

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT